J-A10041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAR MATTHEWS | : | |
| | : | |
| Appellant | : | No. 397 EDA 2023 |

Appeal from the PCRA Order Entered July 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003979-2014

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:        **FILED DECEMBER 20, 2024**

Appellant, Jamar Matthews, appeals from the order of the Court of Common Pleas of Philadelphia County that dismissed his untimely second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq*. A jury found him guilty of attempted murder, criminal conspiracy to commit murder, aggravated assault, possession of a firearm by a prohibited person, carrying a firearm without a license, carrying a firearm on public streets or public property in Philadelphia, and possessing an instrument of crime.[1] Appellant claims, *inter alia*, that he was entitled to relief based on impeachment evidence that was withheld from him by the Commonwealth.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901/2502, 903/2502, 2702, 6105, 6106, 6108, and 907, respectively.

On direct review, we adopted the following summary of the facts for this case:

[O]n November 29, 2013, at approximately 9:45 p.m., [Philadelphia Police Officer Milord Celce] received a radio call for a shooting and person with a gun at 2603 West Harold Street in Philadelphia. Officer Celce, who was approximately four (4) blocks away at the time, promptly arrived at the above location, where he observed bullet holes in the windows and encountered the complainant, Enoch Carter. Based on his conversation with Mr. Carter, they proceeded to 2642 North 26th Street—literally just around the corner, not even 30 seconds later—where they met Highway Patrol Officer Reid, and knocked on the door. Appellant, who was in a wheelchair, answered the door; his cohort, Co-Defendant Karie Dozier (hereinafter "Dozier"), was seated on a couch directly facing the front door of the residence. As soon as Mr. Carter saw Dozier, he yelled and pointed to him, [t]hat's the guy.

Officer Celce placed Dozier on the floor to detain him. He lifted the cushion where Dozier was sitting and recovered a handgun; Dozier was sitting on the gun. Officer Celce escorted Dozier outside, where he was positively identified by Mr. Carter, and took him into custody. Mr. Carter also was transported to Central Detectives for an interview, during which Officer Celce learned of [a]ppellant's involvement; he then went back to the residence and placed [a]ppellant under arrest at 12:15 a.m.

… Mr. Carter testified that, prior to the shooting, he had lived around the corner from [a]ppellant for approximately one and one-half (1½) years and was friends with him. Mr. Carter used to hang out with [a]ppellant frequently, and also helped him with chores such as laundry and grocery shopping. Several weeks before the shooting, on October 17, 2013, [a]ppellant was driving a van (with handicapped hand controls) in which Mr. Carter and a female friend of [a]ppellant were riding as passengers. Approaching a red light, [a]ppellant mistook the accelerator for the brakes, and crashed into a building, injuring Mr. Carter and the female. Appellant was arrested at the scene for his involvement in the crash. Mr. Carter was transported to the

hospital via ambulance for treatment and subsequently required physical therapy for his injuries. Several weeks later, Mr. Carter commenced a personal injury lawsuit against [a]ppellant, which [a]ppellant took to heart. Appellant thereafter had several different individuals approach Mr. Carter to persuade him to "drop" the lawsuit, including a younger gentleman earlier on the day of the shooting, who proposed a fistfight in front of [a]ppellant's residence. Mr. Carter declined the proposal and went home.

Later that evening, at approximately 9:40 p.m., Co-Defendant Dozier knocked on Mr. Carter's door. Mr. Carter stuck his head out of his second-story window to see who it was. Dozier asked him why he had a beef with [a]ppellant; Mr. Carter explained that he did not have a problem with [a]ppellant, it was [a]ppellant who had a problem with him due to the lawsuit. After speaking with Dozier for five (5) to seven (7) minutes, [a]ppellant approached on his wheelchair and parked it next to Dozier. Dozier then asked [a]ppellant, "what do you want me to do[?]" at which point [a]ppellant said[,] "go ahead[.]" Right on cue, Dozier retrieved a black handgun, pointed it at Mr. Carter and opened fire. Mr. Carter saw the flash from the gun, and a bullet went through his window; he fell back into the home. As he was falling, Dozier fired several more shots at him. Fortunately, none of the bullets struck Mr. Carter, who immediately dialed 911 to summon police. During the call, he provided a physical description of Dozier and reported [a]ppellant's involvement. A few minutes later, he accompanied police to [a]ppellant's residence, where Dozier and the handgun were taken into custody following Mr. Carter's positive identification.

… [Ballistics expert and] Philadelphia Police Officer Jesus Cruz testified that he test-fired the handgun that Dozier was sitting on and compared the fired cartridge casing ("FCC") with the five (5) FCCs recovered in front of Mr. Carter's residence. Based on his analysis, which was peer-reviewed, he concluded to a reasonable degree of scientific certainty that each of the five (5) FCCs recovered at the scene was, in fact, fired from Dozier's handgun.

… Philadelphia Police Detective Michael Repici … testified that, on November 29, 2013, he was assigned to investigate this matter. At approximately 11:35 p.m., he interviewed Mr. Carter at Central Detectives. When Mr. Carter described [a]ppellant's involvement, Detective Repici asked Officer Celce—who was present—if he

knew where this guy is? Officer Celce responded, [y]eah he's still back there, at which point Detective Repici directed him to arrest [a]ppellant. Officer Celce embarked on this quest a few minutes prior to 12:00 a.m.

Detective Repici then went to the crime scene, 2603 Harold Street, which was being held, or secured, by fellow officers. There, he recovered under property receipt four (4) FCCs on the pavement and one (1) FCC in the street, all in close proximity to each other in front of Mr. Carter's residence. He also took photographs of all the evidence, which he described as the photos [that] were displayed to the jury. Detective Repici then proceeded to 2642 North 26th Street, where he took photographs of the couch and black handgun, the latter of which he recovered under property receipt.

Finally, the Commonwealth introduced via stipulation: (a) certificates of non-licensure with respect to both [a]ppellant and Dozier, establishing that neither male was licensed to carry a firearm and thus not permitted to carry a firearm in Pennsylvania; (b) authenticity of prison phone call records between [a]ppellant and Dozier, in which they discuss methods to prevent the case from going forward—which recordings were played for, and their transcripts displayed to, the jury.

*Commonwealth v. Matthews*, 2016 WL 4978355, *1-2 (Pa. Super., filed Sept. 16. 2016) (unpublished memorandum), *citing* Trial Court Opinion, 12/24/15, 2-5 (citations to notes of testimony, footnotes, and some internal quotation marks omitted).

Following a three-day trial that commenced on April 21, 2015, in which he was tried alongside co-defendant Dozier, a jury found Appellant guilty of the above-referenced offenses. After the completion of a pre-sentence investigation report, the trial court sentenced him to thirteen to twenty-six years' imprisonment on June 26, 2015. Following the denial of timely filed post-sentence motions for judgment of acquittal and reconsideration of

- 4 -

sentence, Appellant appealed. Upon reviewing challenges to the admission of a statement by co-defendant Dozier, the sufficiency of the evidence, and the discretionary aspects of the sentence, **Matthews**, 2016 WL 4978355, at *3-5, we affirmed. **Commonwealth v. Matthews**, 158 A.3d 180 (Pa. Super. 2016) (table) (2468 EDA 2015). On March 15, 2017, our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Matthews**, 169 A.3d 11 (Pa. Super. 2017) (table) (462 EAL 2016).

On July 20, 2017, Appellant timely filed a *pro se* PCRA petition.[2] Counsel was appointed and filed a **Turner**/**Finley**[3] no-merit letter along with a petition to withdraw from representation. On September 25, 2017, the PCRA court sent Appellant notice of its intent to dismiss the post-conviction petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not respond directly to the PCRA court's Rule 907 notice, but rather, filed a motion for extension of time, a motion for transcripts, and a petition for leave to amend his PCRA petition. On October 30, 2017, the PCRA court entered an order dismissing the petition and permitting counsel to withdraw. Appellant

---

[2] Appellant claimed in the petition that trial counsel provided ineffective assistance by: (1) failing to seek suppression of the firearm recovered during an illegal search; (2) failing to raise a claim of prosecutorial misconduct when the Commonwealth supposedly presented perjured testimony from the responding and investigating police officers; (3) failing to object to the introduction of his co-defendant's statement as improperly implicating him in the crime, and failing to request a curative instruction; and (4) failing to object to improper comments by the prosecutor during closing argument. PCRA Petition, 7/20/17, § 6(a).

[3] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

appealed *pro se*. On March 7, 2019, we affirmed the dismissal. ***Commonwealth v. Matthews***, 215 A.3d 625 (Pa. Super. 2019) (table) (3922 EDA 2017). On October 30, 2019, our Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Matthews***, 218 A.3d 1204 (Pa. 2019) (table) (218 EAL 2019).

On July 28, 2021, Appellant filed *pro se* his second PCRA petition that is the focus of this appeal. In it, he alleged the existence of previously unknown facts including a "[p]olice misconduct report affecting one of the key witnesses['] reports and testimony not disclosed before trial." *Pro Se* Second PCRA Petition, 7/28/21, § 5(ii). He alleged that "[t]he Commonwealth was in possession of exculpatory evidence in regards to Officer Celce['s] untruthful tendencies." ***Id.*** at § 6(A). Based on that allegation, he referred to the existence of "cumulative errors, prosecut[orial] misconduct[,] and ineffective assistance of trial counsel." ***Id.*** Appellant appended to the petition what the PCRA court refers to as a "police misconduct disclosure packet" (referred to by the PCRA court as the "PMD report") made by the Philadelphia Police Department with regard to Officer Celce. PCRA Court Opinion, 8/24/23, 5. In its opinion, the PCRA court notes:

> According to the Commonwealth, the PMD report concluded that "police internal investigation documents reveal that Officer Celce was credibly accused of assaulting a woman and lying to the investigating authority, as well as lying to investigators concerning allegations that he had engaged in animal cruelty. He was also determined to have violated departmental policy concerning social media."

- 6 -

*Id.* Appellant also appended to his petition a list of Assistant District Attorneys, including the prosecutor from his trial, who were allegedly fired by Philadelphia District Attorney's Office. Along with the petition, Appellant filed a motion requesting the appointment of counsel and a motion for discovery, requesting "reports and misconduct history" for the trial prosecutor and Detective Repici. *Pro Se* Motion for Discovery, 7/28/21, 1.

On March 4, 2022, the Commonwealth filed a motion to dismiss the petition. Regarding the PMD report, the Commonwealth noted,

> The only instance of misconduct that was investigated and concluded prior to [Appellant's] trial, and thus able to be disclosed prior to trial, was the instance where Officer Celce assaulted a woman and lied to investigators concerning that assault. The other two reports of misconduct occurred after [Appellant's] trial and could not be disclosed at that time.

Commonwealth's Motion to Dismiss, 3/4/22, 7 (footnote omitted). Assuming the available misconduct report about Officer Celce had been disclosed in a timely manner, the Commonwealth reasoned that it would not have affected the outcome of Appellant's criminal matter. It asserted that Appellant's motion to suppress the recovered firearm would have failed under "multiple legal theories … even absent Officer Celce's testimony that he saw the weapon in plain sight upon the arrest of co-defendant Dozier and the warrant later obtained by Detective Repici." *Id.* at 7-8. It also alleged that the report would not have affected the convictions for attempted murder, aggravated assault, and conspiracy because those convictions were "established independently

from Officer Celce's testimony through the testimony of victim Enoch Carter and the ballistics evidence obtained at the scene of the shooting." *Id.* at 8.

Appellant filed a response to the Commonwealth's motion, arguing, *inter alia*, that the material from the PMD report would have been useful for impeachment of Officer Celce and that impeachment would have led to the suppression of the recovered firearm. Appellant's Response to Motion Dismiss, 4/4/22, 2-4.

On April 22, 2022, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907 because the issues raised by Appellant lacked merit. The court found that, while the PMD report "may have qualified as *Brady*[4] material," Appellant was unable to establish that he was prejudiced by the "failed disclosure." Rule 907 Notice, 4/22/22, ¶ 1. As for the lack of demonstrated prejudice, the court noted:

> [T]he firearm was recovered in [Appellant's] home upon the lawful arrest of co-defendant Dozier. A search of the person arrested, as well as the area within his immediate control is permissible, and as the Superior Court noted in [Appellant's] direct appeal, there was sufficient evidence to establish that [Appellant] conspired with co-defendant Dozier to attempt to murder the complaining witness (*Commonwealth v. Matthews*, 2468 EDA 2015). Inasmuch as the complaining witness made an immediate, positive identification of Dozier as the shooter, and the firearm was seized from the couch he was sitting on, it was seized in the course of a lawful arrest. The credibility of Officer Celce, therefore, would have made no impact on the recovery of the gun in this case. Further, the officers held the scene for court approval of a search warrant, which would have been granted based upon

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

the complaining witness' information alone and the gun would have been inevitably discovered.

… Insofar as the impact of the PMD report on the trial, [Appellant] was not arrested immediately. The complaining witness, Mr. Carter identified [Appellant] for the first time during his interview with Detective Rep[i]ci at the district office. Officer Celce was then instructed by Detective Repici to return to the house to arrest [Appellant]. Officer Celce did not provide any information that led to [Appellant's] arrest; he was following the direction of his superior officer. [Appellant] cannot point to any prejudice he suffered as a result of the unknown PMD report at the time of trial because Officer Celce's involvement in [Appellant's] arrest was minimal and he acted solely upon the by [*sic*] Detective Repici.

*Id.* at ¶¶ 2-3. The court also noted that the PMD report itself could not have constituted after-discovered evidence because it only would have been used solely for impeachment purposes and would not have compelled a different result "either at the suppression motion [hearing] or the trial." *Id.* at ¶ 4. The court lastly noted that his claim of prosecutorial misconduct, that alluded to the firing of the trial prosecutor, failed for lack of development. *Id.* at 5. After Appellant did not respond to the Rule 907 notice, the PCRA court dismissed the petition on July 22, 2022. This appeal followed.

Appellant presents the following questions for our review:

1.  Has the [C]ommonwealth abandoned the original theory of "exigent circumstances" and for the first time on appeal advance a new theory or argument of "inevitable discovery" and "incident to arrest" to establish legitimacy of [O]fficer [C]elce's warrantless search and therefore by [R]ule 9544(a)(2) waived the "new theory" and has no argument on this appeal[?]

2.  Did the use of the firearm evidence and testimony about it influence a verdict of guilt when its use was admitted based

on [O]fficer [C]elce's untruthful reports and testimony denying a fair trial[?]

3.  Did the "misconduct reports" written by the Commonwealth prevent trial counsel from knowing that [O]fficer [C]elce tends to be untruthful in reports and investigation, denying trial counsel the ability to prepare for impeachment, pre-trial suppression and objections to his many inconsistent statements and reports, denying petitioner a fair trial[?]

4.  Did the reports and testimony of [O]fficer [C]elce not only affect the preparation and trial strategy of the defense but the [C]ommonwealth as well prejudicing both sides and causing a verdict unworthy of confidence and denying a fair trial[?]

5.  Cumulatively, did the evidence complained of such as, out of court identification procedures, co-defendant statements, firearm, and other errors such as improper arguments, no limiting cautionary instructions for tape recorded co-defendant statements, errors of phone recording transcripts, and the information withheld by the [C]ommonwealth prejudice petitioner and deny a fair trial[?]

Appellant's Brief at A(6)(a)-A(6)(b).

Prior to addressing Appellant's claims, we must determine whether Appellant properly invoked our jurisdiction by timely filing a notice of appeal. *See Commonwealth v. Powell*, 290 A.3d 751, 757 n.12 (Pa. Super. 2023) ("Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal") (citation omitted). Where the petition at issue was dismissed on July 22, 2022, the thirty-day period for filing a timely notice of appeal would have expired on August 22, 2022. Pa.R.A.P. 903(a) (setting the general rule for the thirty-day filing deadline). Here, the trial court's docket indicates that Appellant's *pro se* notice of appeal was not filed until January 12, 2023.

- 10 -

Conversely, the notice of appeal docketed with this Court contains an incomplete filing stamp by the trial court, indicating a filing date of "FEB 08," with an indecipherable year on the date stamp. Because the date stamp on the notice of appeal is incomplete, the date listed on the appellate docket for its filing is January 12, 2023, to conform with the trial court docket. Regardless of which date is used, Appellant's notice of appeal is facially untimely.

Our examination of the record shows that there are no entries on the trial court's docket indicating that Appellant was served with the PCRA court's dismissal order. *See* Pa.R.Crim.P. 114(C)(2)(c) (stating that the docket entries "shall contain" the "date of service of the order"). In ***Commonwealth v. Midgley***, 289 A.3d 1111, 1117 (Pa. Super. 2023), this Court addressed a trial court's failure to comply with Rule 114(C)(2)(c), concluding that, "Where the trial court docket in a criminal case does not indicate service on a party or the date of service [of the order under appeal], we will not quash the appeal or require further proceedings. Rather, we will treat the time in which to take an appeal as never having started to run and treat the appeal as timely." On this basis, we may consider this appeal as timely filed.[5]

---

[5] Our application of the holding in ***Midgley*** to this appeal is somewhat generous in that Appellant makes multiple assertions in the certified record suggesting that proper service of the dismissal order was completed by the PCRA court even if the lower court did not indicate the service as required on its dockets. In the "Verified Statement" attached to the notice of appeal, Appellant stated "[d]ismissal of PCRA was received on 7/27/22." Similarly, in

*(Footnote Continued Next Page)*

The next procedural issue we must address is the existence of an applicable exception to the PCRA's time-bar in order to permit the PCRA court to review Appellant's underlying petition on its merits. *See Commonwealth v. Beatty*, 207 A.3d 957, 964 (Pa. Super. 2019) ("Despite the Commonwealth's failure to object to the untimeliness of Appellant's current petition, as well as the PCRA court's decision to address the petition on its merits, the timeliness of the PCRA petition remained at issue and could not be waived or established by consent."); *see also Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000) (where a PCRA petition is not timely filed and is not eligible for an exception to the PCRA's time-bar, the PCRA court lacks authority to address the substantive merits of the PCRA claims).

The underlying petition was untimely filed where it was filed more than four years after Appellant's judgment of sentence became final.[6]  42 Pa.C.S.

_____

the "Form of Affidavit" notarized on December 29, 2022, also attached to the Notice of Appeal, Appellant stated, "I received the order dismissing my PCRA on 7-27-22."  We note that the Commonwealth does not address *Midgley*, let alone ask us to distinguish it on the basis that service of the dismissal order was completed in a timely manner.  Appellee's Brief at 8 n.5.  Instead, the Commonwealth notes that Appellant "provided the PCRA court with documentation suggesting that he mailed a notice of appeal multiple times, the earliest being sent on August 17, 2022."  *Id.*  In the absence of any relevant briefing about our holding in *Midgley*, we will not *sua sponte* create an exception to its applicable holding even though the record suggests that lack of notice concerning the dismissal of the petition played no apparent role in causing Appellant to file an untimely notice of appeal.

[6] Appellant's judgment of sentence became final on June 13, 2017, after the denial of his direct review petition for allowance of appeal when his time for filing a petition for writ of *certiorari* with the United States Supreme Court
*(Footnote Continued Next Page)*

- 12 -

§ 9545(b)(1) (PCRA petitions, other than where three statutory exceptions to timeliness apply, shall be filed within one year of the date the judgment of sentence becomes final). The Commonwealth did not object to substantive review based on the timeliness of Appellant's petition in its motion to dismiss, and, by only engaging in a merits analysis, it seemed to the PCRA court that it had tacitly accepted Appellant's assertion of the newly-discovered facts exception to the PCRA's time-bar.[7] PCRA Court Opinion, 8/24/23, 6-7 ("Appellant has established, and the Commonwealth concedes, that the PMD report was not known to him, nor could it have been ascertained by the exercise of due diligence prior to trial."); *Pro Se* Second PCRA Petition, 7/28/21, § 5 (asserting the 42 Pa.C.S. § 9545(b)(1)(ii) exception based on "[p]olice misconduct reporting affecting one of the key witnesses['] reports

---

expired. 42 Pa.C.S. § 9545(b)(3) ("For purposes of [the PCRA], a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review); U.S.Sup.Ct.R. 13(1) (setting 90-day deadline for filing a petition for writ of *certiorari*).

[7] The Commonwealth disagrees with the PCRA court's conclusion in its opinion that the Commonwealth conceded "the issue of timeliness" with respect to the petition by remaining silent as to the applicability of a time-bar exception. Appellee's Brief at 12 n.6, **citing** PCRA Court Opinion, 8/24/23, 6-7. It asserts, "Although the Commonwealth did not explicitly argue timeliness, it did not concede the issue; rather it assumed *for the sake of argument alone* that even if a timeliness exception *were* properly developed and invoked, defendant was nonetheless not entitled to relief on the merits of his claim." **Id.** (emphasis in original). When the existence of jurisdiction is in question, as it was in this case, we suggest to the Commonwealth that it should address the matter, at a minimum, for the sake of judicial economy.

and testimony not disclosed before trial); 42 Pa.C.S. § 9545(b)(1)(ii) (permitting a time-bar exception where a PCRA petitioner alleges and proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence").

While the Commonwealth took no position on the applicability of an exception to a time-bar before the PCRA court, it now argues on appeal that Appellant did not prove the applicability of a time-bar exception due to a lack of argument:

> [Appellant]'s form petition included a checkbox allegation of the newly-discovered facts exception. But beyond this cursory demarcation, [Appellant] did not argue—let alone meaningfully acknowledge—the PCRA's jurisdictional timeliness mandates. Moreover, [Appellant] again failed to recognize the time-bar on appeal. His brief, while lengthy, makes no mention of or citation to the relevant statute, nor does it provide any argument regarding how any of the statute's enumerated timeliness exceptions were satisfied below.

Appellee's Brief at 12-13 (record citation and footnote omitted).

Our review of the denial of a PCRA petition is limited to determining whether the record supports the PCRA court's ruling and whether its decision is free of legal error. *Commonwealth v. Williams*, 196 A.3d 1021, 1026-27 (Pa. 2018).

While the Commonwealth now takes issue with Appellant's "checkbox" assertion of the Section 9545(b)(1)(ii) time-bar exception, we find no legal error with the PCRA court's application of the exception to Appellant's claim

concerning the PMD report about Officer Celce.  The combined assertions in the PCRA petition and a handwritten supplement to the petition between numbered pages eight and nine reflected that the Commonwealth supposedly withheld from Appellant impeachment material that included previously unknown facts to Appellant, which was in the Commonwealth's possession, including parts of the PMD report that were attached to the petition.  *Pro Se Second PCRA Petition*, §§ 5(ii), 6(A), 6(C), Supplement (A).  The copy of the report is included in the certified record in a filing Appellant made with the lower court prior to the filing of his PCRA petition at issue.  Attached to the copy of the report is correspondence from the District Attorney's Office's PCRA Unit to Appellant, dated July 28, 2020, referring to the enclosure of the report and directing Appellant that the office had identified Officer Celce, among others, as a person "who may have or have [*sic*] engaged in misconduct that necessitate[d] disclosure."[8]  Correspondence from PCRA Unit to Appellant, 7/28/20, 1, attached to Notice Entering "New Evidence," 8/17/20.  Appellant's petition asserting the PMD report as a form of previously unknown facts for time-bar purposes was filed exactly one year after the date on the disclosure correspondence.  ***See*** 42 Pa.C.S. § 9545(b)(2) ("Any petition invoking an

_____

[8] For the sake of our latter discussion concerning the relevance of the PMD report, we note the District Attorney's Office included in their letter that their disclosure to Appellant was "in no way a concession to the admissibility, relevance, or significance of any of the disclosed information." Correspondence to Appellant from PCRA Unit, 7/28/20.

- 15 -

exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented.").

In these circumstances, we agree that the PCRA court correctly applied the Section 9545(b)(1)(ii) exception and proceeded with substantive review of Appellant's related **Brady** claim. We reject the Commonwealth's argument that Appellant waived a time-bar exception claim by failing to develop his argument concerning it as we find that Appellant minimally proved the application of the exception in his petition. Having concluded that the PCRA court properly considered the substantive merits of the **Brady** claim, we now may proceed with reviewing Appellant's appellate claims addressing the PCRA court's dismissal for lack of merit premised on an insufficient demonstration that the withholding of the PMD report affected the outcome of Appellant's case.

Appellant initially argues that the Commonwealth improperly presented new theories supporting the police officers' recovery of the gun in its motion to dismiss when it argued that the gun could not have been suppressed based on inevitable discovery and recovery incident to lawful arrest theories. Appellant's Brief at 1-6. He suggests that the Commonwealth waived new theories supporting the recovery of the gun by not arguing them before the trial court. **Id.** at 1. In support of that point, he cites, *inter alia*, this Court's unpublished memorandum at **Commonwealth v. Linaberry**, 2020 WL 5135337 (Pa. Super., filed Aug. 31, 2020) (holding the Commonwealth as the appellant challenging a grant of a suppression motion could not raise a new

theory on appeal that was not presented to the suppression court), and Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Appellant's Brief at 1-3.

*Linaberry* and Rule 302(a) address an appellant's burden to have preserved a theory for relief (for issues other than challenges to the legality of a sentence or the sufficiency of the evidence supporting a conviction) before the trial court, prior to an appeal. Appellant in this regard fails to appreciate that only appellants are charged with issue preservation obligations, whereas appellees, including the Commonwealth in this case, bear none. *See Heim v. MCARE Fund*, 23 A.3d 506, 511 (Pa. 2011) (explaining that an appellee does not bear the burden of issue preservation). Instead, "an appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the appellee." *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007); *see also Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa. Super. 2022) ("this Court 'may affirm a PCRA court's order on any legal basis'") (citation omitted). As we may affirm on any legal basis, independent of preservation on the part of an appellee, Appellant's assertion of waiver on the part of the Commonwealth is unavailing.

In his next three issues, Appellant challenges the PCRA court's determination that the absence of a timely disclosure of the PMD report concerning Officer Celce would have not affected the outcome of his case. He surmises that if the impeachment evidence concerning Officer Celce would have been made available to him, the recovered firearm would have been

suppressed prior to trial and the jury's verdict would have changed. Appellant's Brief at 7-26. At a minimum, Appellant maintains that the "withholding of that evidence resulted in the denial of a fair trial." *Id.* at 7.

The law governing *Brady* claims is well settled:

> In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (internal citations and quotations omitted). The prosecution's duty under *Brady* is limited as "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995) (citing *U.S. v. Bagley*, 473 U.S. 667, 675 and n.7 (1985)). "[T]here are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensured." *Lambert*, 884 A.2d at 854 (quoting *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001)).

Here, the parties only dispute whether the PMD report was material such that prejudice ensued from it being withheld. As to that prong of the **Brady** standard, "prejudice occurs when a defendant shows a 'reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" **Commonwealth v. Conforti**, 303 A.3d 715, 730 (Pa. 2023), **quoting Commonwealth v. Bomar**, 104 A.3d 1179, 1189 (Pa. 2014). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Commonwealth v. Koehler**, 36 A.3d 121, 133 (Pa. 2012), **quoting Commonwealth v. Paddy**, 15 A.3d 431, 450 (Pa. 2011). "In other words, 'the undisclosed evidence must be 'material to guilt or punishment.''" **Conforti**, 303 A.3d at 730, **quoting Bomar**, 104 A.3d at 1189.

The reports of misconduct concerning Officer Celce that were appended to Appellant's petition included three different sets of allegations. Only one of the three sets is relevant for our review.[9] With respect to that set, the Commonwealth notes:

_____

[9] The latter sets involved alleged misconduct that either did not take place or were not reported to the Commonwealth until after Appellant was on post-conviction review of his first PCRA petition. **See** Appellee's Brief at 6 n.3. Accordingly, they could not be relevant for a determination on a **Brady** violation. **See District Attorney's Office for Third Judicial Dist. v. Osbourne**, 557 U.S. 52, 68-69 (2009) (**Brady** obligations do not extend to post-conviction proceedings; holding that the Ninth Circuit "went too far" in applying **Brady** to post-conviction proceedings; noting, "Osbourne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. **Brady** is the wrong framework.").

The report established that Officer Celce was alleged to have physically assaulted two women and vandalized one of their phones during a personal, unofficial domestic dispute occurring on April 5, 2014. In a memorandum dated October 14, 2014, the assigned Internal Affairs inspector "sustained" the allegations of physical abuse and vandalization. The inspector also concluded that Officer Celce lied during the investigation and falsified police reports regarding the assaults. However, following an April 23, 2015 board hearing, Officer Celce was found "not guilty" of lying during the investigation.

Appellee's Brief at 6 (footnote and record citation omitted).

Officer Celce's trial testimony reflected that: (1) he responded to the report of the shooting in the 2600 block of West Harold Street on November 29, 2013, at which point he encountered victim Enoch Carter (N.T. 4/21/15, 86-88); (2) he and Carter then went to Appellant's apartment at 2642 N. 26th Street, based on the information provided by Carter (*id.* at 88-90); (3) Appellant answered the door while co-defendant Dozier was sitting on a couch (*id.* at 91); (4) Carter identified Dozier as "the guy who shot at [his] house" (*id.*); (5) he detained Dozier and lifted the couch cushion Dozier had been sitting on and found a gun there where Dozier's hand had been (*id.* at 91-92); and (6) he placed Dozier in handcuffs in a patrol car after Carter again positively identified Dozier as the shooter (*id.* a 92-93). Officer Celce testified that he grabbed the gun "[f]or safety purposes" because Appellant and an unidentified female on the side of the couch were present. N.T. 4/21/15, 98-99. He then "h[e]ld it for detectives" while he "h[e]ld the house for a search warrant." *Id.* at 99, 147. Officer Celce later took victim Carter to the Central Detectives' office. *Id.* at 100. Based on the information included in a

- 20 -

statement Carter then provided to the police, Officer Celce returned to Appellant's apartment and took him into custody. *Id.* at 100-01.

The PCRA court found that no prejudice resulted from the lack of disclosure of the impeachment evidence in this case because the firearm would have been inevitably recovered pursuant to the search warrant that was secured for Appellant's home, regardless of the fact that Officer Celce initially secured the gun at the scene:

> Assuming, *arguendo*, that Appellant had the opportunity to impeach Officer Celce's credibility concerning the recovery of the gun, and further assuming that Officer Celce's testimony was completely disregarded, the firearm would have nevertheless been discovered upon execution of a lawfully issued search warrant for the home. Therefore, even if Appellant succeeded in showing that Officer Celce's account of how the firearm was first recovered was untruthful, it would have been inevitably discovered upon search of the house. *See Nix v. Williams*, 467 U.S. 431, 442 (1984) (inevitable discovery of evidence by lawful means is admissible); *Commonwealth v. Gonzalez*, 979 A.2d 879 (Pa.[ ]Super. 2009). Furthermore, although Appellant does not challenge the legality of the affidavit of probable cause or of the warrant, a review of the affidavit shows that there was no mention of discovery of the firearm having already been observed by Officer Celce (Commonwealth's Motion to Dismiss, Exhibit "A"). Thus, Officer Celce's account of how the gun was discovered was not considered by the magistrate approving the warrant.
>
> Because the firearm would have been discovered with or without Officer Celce's account, Appellant is unable to show that suppression of the firearm would have been likely.

PCRA Court Opinion, 8/24/23, 9 (footnote omitted). Our review of the affidavit in support of the search warrant in the certified record confirms that it was signed by Detective Repici – not Officer Celce – and that it was based only on

the information provided by victim Carter without any mention as to the sighting of a firearm in Appellant's home. Because the record reflects that Officer Celce's input played no role in the police obtaining the search warrant, which was independently supported by probable cause from victim Carter's account, we are unable to find that the PCRA court erred by concluding that there was not a likelihood that impeachment of Officer Celce with the available misconduct report would have resulted in the suppression of the recovered gun.[10]

In general, we fail to grasp from Appellant's arguments focused on the possible suppression of the recovered gun that impeachment of Officer Celce based on a single incident of possibly lying about an off-duty, personal domestic abuse allegation would have undermined confidence in the verdict in this case where the convictions in this case would have been independently supported by victim Carter's testimony and the ballistics evidence at the scene of the shooting even if the gun had never been recovered. **See** N.T. 4/22/15,

_____

[10] The PCRA court additionally analyzed whether Appellant could have prevailed by alleging that the impeachment evidence concerning Officer Celce constituted after-discovered evidence. We need not evaluate that discussion because Appellant's arguments fail to demonstrate any manner in which the PMD report would have been used for any purpose other than for impeachment purposes. **See Commonwealth v. McCracken**, 659 A.2d 541, 545 (noting that after-discovered evidence may warrant a new trial, _inter alia_, only where it is not submitted solely for impeachment purposes). Appellant baldly alleges that the PMD report could have been used for "[Pa.R.E.] 404(b)(2) evidence," Appellant's Brief at 9, but he never develops that point to demonstrate that the PMD report would have been used as anything other than for impeachment of Officer Celce's account of the discovery of the gun recovered in this case.

15-19 (Carter identifying co-defendant Dozier at the person who shot at him after Appellant, referred to as "Chase," told Dozier to "go ahead," in response to Dozier asking Appellant, "What do you want me to do?"). We essentially concluded as much in denying, without any discussion as to the recovery of the firearm, Appellant's sufficiency challenge on direct review in which he alleged that the evidence was insufficient for his intent to commit attempted murder and conspiracy to commit murder. *Matthews*, 2016 WL 4978355, at *5; *see Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa. Super. 2021) ("It is hornbook law that a member of a conspiracy is criminally culpable for all actions taken in furtherance of the conspiracy."). Appellant's direction to co-defendant Dozier to "go ahead" immediately before Dozier then began firing the gunshots at Carter, along with their subsequent flight together provided sufficient evidence to establish a conspiracy between the two men which in turn made Appellant liable for the criminal actions that Dozier committed with the gun in the pursuit of their conspiracy. *See Commonwealth v. Taraschi*, 475 A.2d 744, 750 (Pa. Super. 1984) ("A conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the confederacy which demonstrates a unity of purpose to accomplish an unlawful act.").

Appellant concludes his brief by arguing that cumulative error from the lack of the PMD report disclosure in addition to six other claims of ineffective

assistance warrants relief.[11]   Appellant's Brief at 26-31.   We are unable to address this claim because it was never developed in his PCRA petition beyond a vague assertion below about "cumulative errors, prosecut[orial] misconduct[,] and ineffective assistance."   *Pro Se* Second PCRA Petition, 7/28/21, § 6(A).   Pennsylvania Rule of Criminal Procedure 902, which governs the content of PCRA petitions, provides that "[e]ach ground relied upon shall be stated in the [PCRA] petition.   Failure to state a ground shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."   Pa.R.Crim.P. 902(B).   Moreover, it is well-established a petitioner bears the burden of proving counsel's ineffectiveness through a three-part ineffectiveness test.   ***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018), ***quoting Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007).   While we found that Appellant minimally preserved his ***Brady*** issue concerning the PMD report in his petition, his blanket assertion of "cumulative errors" and "ineffective assistance" in his PCRA petition failed to adequately preserve the instant claim for our review.   ***Cf. Commonwealth v. Small***, 980 A.2d 549, 579 (Pa. 2009) (concluding that a broad and vague

_____

[11] His additional claims referenced here included challenges to trial counsel's effectiveness for: (1) "not requesting a limiting/cautionary instruction to the jury for the use of the co-defendant[']s statements in a joint trial;" (2) "not challenging or objecting to the search warrant;" (3) "not objecting to the use of the 'entire' prison tape recorded call of the co-defendant;" (4) "not objecting to Officer Celce's 'Brady' violation of withholding his illegal search from discovery;" (5) "not objecting to the improper argument in the prosecutor[']s opening and closing argument;" and (6) "not objecting to identification testimony and physical evidence obtained in violation of petitioner[']s 4th Amendment rights."   Appellant's Brief at 26-27.

claim of the prejudicial effect of cumulative errors did not entitle the appellant to relief).

Even if Appellant had elaborated on his blanket assertion of "cumulative errors" and "ineffective assistance" in his PCRA petition and included the last section of his appellate brief in the petition, we would lack jurisdiction to address the additional ineffective assistance of counsel claims because the Section 9545(b)(1)(ii) time-bar exception that permitted us to review the **Brady** claim concerning the withheld PMD report would not apply to unrelated claims of ineffective assistance because the PCRA's time-bar exceptions are claim-specific. **See Commonwealth v. Porter**, 35 A.3d 4, 13-14 (Pa. 2012) (Section 9545(b) "speaks in singular terms of 'the claim' or 'the right' which is the subject of a serial PCRA 'petition'" and, as such, the time-bar exceptions "are claim specific"); **Commonwealth v. Woods**, 179 A.3d 37, 44 (Pa. Super. 2017) ("if the right announced in **Miller** [**v. Alabama**, 567 U.S. 460 (2012)] applies to any of [a]ppellant's claims, the petition is timely as to that specific claim"). Where Appellant did not plead and offer to prove any time-bar exceptions that would apply to claims of ineffective assistance unrelated to his reviewable **Brady** claim, we are unable to review his cumulative error claim.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/20/2024